## In re WESTERN PAC. R. CO.

### No. 26591–S.

District Court, N. D. California, S. D.

May 13, 1941.

See also, D.C., 34 F.Supp. 493.

Allan P. Matthew, John O. Moran, and McCutchen, Olney, Mannon & Greene, all of San Francisco, Cal., for trustees of debtor.

Garret W. McEnerney and Andrew F. Burke, both of San Francisco, Cal., and Whitman, Ransom, Coulson & Goetz and Horace E. Whiteside, all of New York City, for A. C. James Co.

Sloss & Turner, of San Francisco, Cal., for Western Pac. R. Corporation.

Morrison, Hohfeld, Foerster, Shuman & Clark, of San Francisco, Cal., and Cravath, de Gersdorff, Swaine & Wood, of New York City, for Institutional Bondholders Committee.

Chickering & Gregory, of San Francisco, Cal., and Milbank, Tweed & Hope, of New York City, for first mortgage trustees.

Emmet McCaffery, of Washington, D. C., and Brobeck, Phleger & Harrison, of San Francisco, Cal., for Reconstruction Finance Corporation.

ST. SURE, District Judge.

On March 27, 1941, the trustees of the debtor filed a petition for instructions respecting the retirement by redemption, out of funds on hand, of not less than ten per cent of the principal amount of the indebtedness represented by outstanding certificates in the sum of $10,000,000, issued to the Reconstruction Finance Corporation on December 1, 1938, later extended, and maturing on December 1, 1941. The proceeds of the loan were used for improvements upon and acquiring equipment for debtor's railroad. The principal of the loan has been reduced to $9,950,000.

Petitioners represent that on March 24, 1941, they had $6,651,925 cash on hand, "and they expect to have cash on hand as of December 31, 1941, after meeting all expenses to be incurred in the operation and maintenance of the properties of debtor, in the total sum of not less than $7,900,000." They are "of the opinion that they would be able, without impairment of necessary working capital and without prejudice to the conduct of the railroad business of the debtor, to retire by redemption not less than ten per cent (10%) of the principal amount of the indebtedness represented by said outstanding certificates of indebtedness."

On April 3, 1941, A. C. James Co., a secured creditor of debtor, filed a motion for an order directing the trustees to pay off and discharge out of any available cash of the debtor not less than $3,000,000 of the principal indebtedness represented by the outstanding trustees certificates.

The petition and motion were heard together on April 22, 1941. Supporting both, appeared counsel for A. C. James Co., and the Western Pacific Railroad Corp.; in opposition appeared counsel for Institutional First Mortgage Bondholders Committee, first mortgage trustees, and the Reconstruction Finance Corporation. Petitioning trustees, acting impartially, awaited instructions from the Court.

The debtor filed its petition for reorganization under § 77 of the Bankruptcy Act on August 2, 1935. On September 28, 1939, the Interstate Commerce Commission certified the approved plan to this Court. Thereafter, on August 15, 1940, this Court made an order overruling all objections and approving the Commission's plan in toto. An appeal, which is pending, was taken to the United States Circuit Court of Appeals. Almost six years ago the debtor invoked the shelter of the courts where it has since remained. Palmer v. Massachusetts, 308 U.S. 79, 82, 60 S.Ct. 34, 84 L.Ed. 93. My attention has been called to the case of Continental Illinois National Bank v. C., R. I. & P. Ry. Co., 294 U.S. 648, at page 685, 55 S.Ct. 595, at page 610, 79 L.Ed. 1110, wherein it is said: "The delay and expense incident to railroad receiverships and foreclosure sales constituted, probably, the chief reasons which induced the passage of section 77; and to permit the perpetuation of either of these evils under this new legislation would be subversive of the spirit in which it was conceived and adopted. *Not only are those who institute the proceeding and those who carry it forward bound to exercise the highest degree of diligence, but it is the duty of the court and of the Interstate Commerce Commission to see that they do.*" (Emphasis supplied.)

The Commission plan was made effective as of January 1, 1939. The plan, inter

alia, provides for refunding the $10,000,-000 of trustees. certificates. Before the Commission made its final order approving the plan, it had before it the record of the actual earnings of the debtor's properties and also the estimates of probable prospective earnings. The plan provides for a capital structure including annual charges in the total amount of $3,647,670.[1] It was contemplated that these charges would be earned and paid for all calendar years after January 1, 1939.

Ever since the debtor sought reorganization under § 77, Bankr.Act, 11 U.S.C.A. § 205, the Trustees appointed by this Court have wisely maintained a minimum fund of cash on hand in the sum of $2,000,000, for purposes of current operations. This is made necessary by the needs of the railroad and because of the volatile earnings of the debtor's property.

The records of debtor's accounting department show a balance of cash on hand, $3,604,429.50, at the end of 1939. On November 25, 1940, when application to this Court for further extension of the R. F. C. loan of $10,000,000 was heard, the trustees reported cash on hand, $5,121,986.

Since January 1st of this year the business of the railroad has greatly increased, mainly due to the national defense program. During the period mentioned the cash on hand increased by $1,986,681.

This unusual increase of earnings and the estimate of the trustees of about $8,-000,000 cash on hand at the end of 1941, prompted the suggestion that a substantial amount be paid upon the $10,000,000 due the R.F.C., thus reducing interest charges.

Up to the present, the only source from which the trustees could borrow money for the use of the debtor was the R.F.C. And the reason why no application has heretofore been made to the Court to pay any part of the debt to the R.F.C. is best explained by the testimony of Trustee Ehrman, in answer to a question by the Court:

"This road has been an uncertain quantity as to cash requirements in respect to some of the years that I know something about it. We have had sudden falling away of cash when we anticipated we would have enough to get through, and we always did have enough to get through, but one year, particularly, we just did scrape through until the fall season came and we ran into big cash again. It isn't a steady income road in the same way that a great many of the Eastern carriers are. It fluctuates very violently."

Without entering into a careful analysis of debtor's financial condition it may readily be seen that if the Commission's plan of reorganization is to be consummated the trustees have no more than sufficient cash on hand for that purpose and the proper maintenance and operation of the railroad.

The increased earnings lately reported may disappear as rapidly as they have accumulated. In these grave and uncertain times there is no knowing what may happen in the matter of increased cost of maintenance and operation. Recently the president of the railroad has called the attention of the trustees to the necessity for the expenditure of about $4,000,000 for necessary new equipment, and the Court will soon be asked to approve the program.

Under ordinary conditions, because of the confidence I have in the trustees, I should not hesitate to instruct them to pay at least ten per cent of the principal amount due on the $10,000,000 certificates held by the R.F.C. But I am fearful that such action would imperil the Commission's plan of reorganization pending determination on appeal. At the hearing Trustee Ehrman testified that looking at the question purely from the standpoint of cash required for operations, "and without regard to any plan of reorganization," substantial payment could possibly be made. Opponents of the petition and motion asked the proponents to give the Court and trustees assurances that in the event the Court advised payment on account it be understood that such action would create no material change in the provisions of the Commission plan. The A. C. James Co. refused to give any assurance that a change of facts would not be taken advantage of on appeal.

In answer to the trustees' petition, under existing circumstances, I feel constrained to instruct the trustees not to make any payment on account of the trustees cer-

---

[1] For corporate and financial history, financial structure, traffic and revenue, earnings available, etc., of debtor, see Commission's original report, 230 I.C.C. 61; see also "Report and Order on Further Consideration," 233 I.C.C. 409, and this Court's opinion on approval of plan, 34 F.Supp. 493.

tificates, and not to make any further effort to refund them by the issue of new trustees certificates to others than R.F.C.

The motion of A. C. James Co. will be denied.